**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CARL OEDER & SONS SAND & GRAVEL | : | CASE NO. C-1-01-826 |
| CO., A DIVISION OF OEDER & SONS | | |
| GARAGE INC., et al., | : | (Judge Susan J. Dlott) |
| | | |
| Plaintiffs, | : | **MOTION OF DEFENDANT** |
| | | **UNION TOWNSHIP FOR** |
| vs. | : | **SUMMARY JUDGMENT.** |
| | | |
| UNION TOWNSHIP, et al., | : | |
| | | |
| Defendants. | : | |

Now comes Defendant Union Township, by and through counsel, and pursuant to FRCP 56, and hereby moves the Court for an order granting summary judgment in its favor, there being no genuine issue of material fact to be litigated at trial and moving Defendant being entitled to judgment in its favor as a matter of law. The reasons for this motion are fully set forth in the accompanying memorandum and are supported by the pleadings and the transcript of the evidentiary hearing held on December 21, 2001 which have been filed with the Court.

Respectfully submitted,

Patrick K. Dunphy (0017827)
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio 45409
(937) 222-3000
Trial Attorney for Defendant Union Township

1

**MEMORANDUM**

## I.    STATEMENT OF FACTS.

On November 16, 2001, Plaintiff Carl Oeder & Sons Sand & Gravel Co., a Division of Oeder & Sons Garage Inc. ("Oeder"), brought a civil action in the Common Pleas Court of Warren County, Ohio, seeking damages, declaratory and permanent injunctive relief, as well as an order granting a preliminary injunction, against Defendant Union Township ("Union Township") to prohibit it from enforcing Township Resolution 112000-01 enacted on November 20, 2000, which prohibited vehicles weighing over 20,000 lbs. from using certain township roads (Snook Road, Dry Run Road and Lebanon Road). On December 3, 2001, Union Township timely removed the action to the United States District Court for the Southern District of Ohio, Western Division, which was the judicial district and division in which the action was pending, pursuant to provisions of 28 U.S.C. §1441 and §1446 (DOCKET NO. 1, *Notice of Removal*). The basis for removal was that the matter was an action of a civil nature in which the district courts of the United States have original jurisdiction in that it arose under the Constitution of the United States within the meaning of 28 U.S.C. §1331. Specifically, Oeder sought a declaration that Township Resolution 112000-01 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

On January 3, 2002, the district court issued an order granting Oeder's application for a preliminary injunction (DOCKET NO. 1, *Order Granting Plaintiff's Motion For A Preliminary Injunction*). That order was affirmed by the United States Court of Appeals for the Sixth Circuit in *Carl Oeder & Sons Sand & Gravel Company, A Division Of Oeder & Sons Garage, Inc. v. Union Township et al.*, Case No. 02-3156 (Sept. 4, 2003), 2003 WL 22097882 (6th Cir.(Ohio)). On May 17, 2002, *Plaintiffs' Amended Complaint For Declaratory Judgment, Injunctive Relief And Other*

2

*Damages* was filed adding Timothy Browning as a plaintiff as well as additional claims for relief. (DOCKET NO. 22, *Plaintiffs' Amended Complaint For Declaratory Judgment, Injunctive Relief And Other Damages*).

Oeder has two sand and gravel operations having geographical connections with Union Township. Raw material is mined by Oeder at a property referred to as Miami View. The raw material is then transported to a processing plant. Oeder's unloaded vehicles weight from 22,000 to 34,000 lbs. The loaded vehicles range from about 60,000 to 80,000 lbs. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at p. 18). On November 20, 2000, Union Township adopted Resolution 112000-01, providing: "BE IT RESOLVED by the Board of Trustees of Union Township, Warren County, Ohio, to prohibit vehicles weighing over 20,000 lbs from using Snook Road, Dry Run Road or Lebanon Road according to section 4511.07I". (DOCKET NO. 19, *Transcript of Proceedings*, TR. at pp. 23-24; DOCKET NO. 1, *Notice of Removal*, 6; DOCKET NO. 1, *Order Granting Plaintiff's Motion For A Preliminary Injunction*).

Snook, Dry Run and Lebanon Roads ("prohibited roadways") all connect to form a "U" shape. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at p. 27). Dry Run Road and Snook roads are residential streets populated by families with children. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at pp. 27-29). Buses from two different public school districts pick up and drop off children along the prohibited roadways. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at p. 29). The prohibited roadways contain curves which vehicles can not go around without either going left of center or off the roadway. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at pp. 35, 37).

About three years prior to December 2001 Union Township put an inch and a half blacktop on Dry Run and Snook Roads at a cost of around $55,000. Prior to that the roadways were maintained by chip and tar. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at p. 28). The Union Township Board of Trustees considered it necessary to impose the weight restriction to prevent excessive damage to the roadways due to the travel of heavy trucks as well as because of safety concerns presented by the vehicles. The Union Township Trustees were concerned that these roadways could not withstand the travel of heavy vehicles and that the vehicles could not safely traverse them. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at p. 36).

Oeder estimates that if it were allowed to use the prohibited roadways it would make about 200 trips a day between the two sand and gravel operations (not including straight trucks). (DOCKET NO. 19, *Transcript of Proceedings*, TR. at p. 19). Oeder claims that it has been damaged by difficulties in getting from one location to the other as a result of the Resolution. There is an alternate route available to Oeder other than the prohibited roadways. However, it is about twice as far to travel the alternate route (contrasted with the route formed by the prohibited roadways). The alternate route is about 7.2 miles as opposed to 3 miles over the prohibited roadways. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at pp. 15-16). Nevertheless, the alternate route is over U.S. highways, state routes and county roads upon which travel can be at a greater speed. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at pp. 17-18).

Oeder claims that its ability to make sand and gravel has been lessened because of added costs in transportation and labor associated with use of the alternate route. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at pp. 20-21). Oeder claims that in order to do the same amount of business using the alternate route it would have to buy more trucks and add more people. (DOCKET

4

NO. 19, *Transcript of Proceedings*, TR. at pp. 21-22). Oeder claims that its capability of bringing material to the processing plant has been cut in half and that it has lost one big customer as the result of use of the alternate route. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at p. 14, 15).

The travel of vehicles weighing over 20,000 lbs. on the prohibited roadways would begin to deflect and break up the roadways within a matter of weeks or months (contrasted with them standing up under the light traffic conditions existing prior to the passage of the resolution and being expected to last eight to ten years). (DOCKET NO. 19, *Transcript of Proceedings*, TR. at pp. 45-50). There was additionally an engineering concern that two older bridges would be unable to carry fully loaded trucks on a frequent basis. (DOCKET NO. 19, *Transcript of Proceedings*, TR. at p. 50).

## II.    **PLAINTIFF'S CLAIMS.**

With respect to claims under federal law Plaintiffs in their *Amended Complaint* assert that in passing Resolution 112000-01 Union Township violated (1) the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (*Count I – Declaratory Judgment: Equal Protection*); (2) the Due Process Clause of the Fourteenth Amendment of the United States Constitution (*Count II – Declaratory Judgment: Due Process*); (3) the Commerce Clause of Article I, Section 8, Clause 3 of the United States Constitution (*Count III – Declaratory Judgment: Commerce Clause*); (4) the Takings Clause of the Fifth Amendment of the United States Constitution (*Count V – Declaratory Judgment: Injunctive Relief*); and (5) the Interstate Commerce Commission Termination Act, 49 U.S.C. §14501 (*Count X – Declaratory Judgment: Violation of the Interstate Commerce Commission Termination Act*). For these violations Plaintiffs seek a declaratory judgment that Resolution 112000-01 is "unconstitutional, invalid and unenforceable" and injunctive relief "prohibiting enforcement of the Resolution" pursuant to 28 U.S.C. §2201, FRCP

57 and FRCP 65, as well as damages pursuant to 42 U.S.C. §1983, and attorney's fees pursuant to 42 U.S.C. §1983 (See *Count VI - § 1983 Action, Count VII – Violation of Due Process: Declaratory Judgment & Count IX – Legal Fees and Expense Under 42 U.S.C. § 1988*). (See DOCKET NO. 22, *Plaintiffs' Amended Complaint For Declaratory Judgment, Injunctive Relief And Other Damages*, at pp. 2, 10).

With respect to claims under Ohio law Plaintiffs in their *Amended Complaint* assert that in passing Resolution 112000-01 Union Township violated (1) the Due Process Clause of Section 1 of Article I of the Ohio Constitution (*Count I – Declaratory Judgment: Equal Protection*); and (2) in doing so "exceeded the authority granted to it by the Ohio General Assembly" (*Count IV – Declaratory Judgment: Unreasonable and Improper Regulation*). (See DOCKET NO. 22, *Plaintiffs' Amended Complaint For Declaratory Judgment, Injunctive Relief And Other Damages*, at p. 2). For these violations Plaintiffs seek a declaratory judgment that Resolution 112000-01 is "invalid, illegal, improper and that it is an abuse of the powers of Defendant in that Union Township has exceed the authority granted to it by the Ohio General Assembly" and injunctive relief "prohibiting enforcement of Resolution No. 112000-01" pursuant to "R.C. 2721.01 *et seq.* of the Ohio Revised Code" (*Count I – Declaratory Judgment: Equal Protection* and *Count IV – Declaratory Judgment: Unreasonable and Improper Regulation*). (DOCKET NO. 22, *Plaintiffs' Amended Complaint For Declaratory Judgment, Injunctive Relief And Other Damages*, at p. 2, 10).

## III.   ARGUMENT OF LAW.

### A.   FRCP STANDARD.

Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FRCP 56(c). In deciding a motion

6

for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only where there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

In *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), the United States Supreme Court stated that the summary judgment procedure is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [Civil] rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." 477 U.S. at 327. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-248 (1986)(Emphasis in original). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.*

**B.      42 U.S.C. §1983.**

Plaintiffs assert that in passing Resolution 112000-01 Union Township violated (1) the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (2) the Due Process Clause of the Fourteenth Amendment of the United States Constitution; (3) the Commerce

7

Clause of Article I, Section 8, Clause 3 of the United States Constitution; (4) the Takings Clause of the Fifth Amendment of the United States Constitution and (5) the Interstate Commerce Commission Termination Act, 49 U.S.C. §14501. For these violations Plaintiffs an award of "damages, costs, and reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §1988". (See DOCKET NO. 22, *Plaintiffs' Amended Complaint For Declaratory Judgment, Injunctive Relief And Other Damages*, at p. 11). Although Plaintiffs assert that the passage of Resolution 112000-01 violated federal law in a number of ways their claim for relief is pursuant to 42 U.S.C. §1983.

42 U.S.C. §1983, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In order to prevail on a claim under Section 1983 Plaintiffs must show that Defendant's conduct was committed by a person acting under color of state law and that this conduct deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. See *Parratt v. Taylor* (1981), 451 U.S. 527, 535, rev'd on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is a remedial statute which creates no substantive rights but rather is available to enforce violations of rights secured by other federal statutes or the United States Constitution. *Baker v McCollan,* 443 U.S. 137 (1979). However, not all federal statutes create rights which are remediable by §1983. "[T]o seek redress through § 1983 * * * a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law.*" *Blessing v. Freestone,* 520 U.S. 329, 340 (1997) (emphasis in original). "'The question of whether Congress * * * intended to create a private right of action [is] definitively answered in the negative' where 'a statute by its

8

terms grants no private rights to any identifiable class.'" *Gonzaga University v. Doe*, 536 U.S. 273, 283-284 (2002)(quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979). [I]t is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983] *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002)."

Furthermore, Section 1983 does not impose liability for violation of duties of care arising out of state tort law. See e.g., *Haag v. Cuyahoga County,* 619 F.Supp. 262, *affirmed*, 798 F.2d. 1414 (6th Cir.1986). The threshold question in a Section 1983 case is whether a federal constitutional or statutory violation has occurred at all. See *Siegert v. Gilley,* 500 U.S. 226, 232 (1991); *Purisch v. Tennessee Technological Inst.,* 76 F.3d 1414, 1423 (6th Cir. 1996); *Turner v. Scott,* 119 F.3d 425 (6th Cir. 1997). It is to that question that we now turn.

## (1)    Equal Protection Clause.

Plaintiffs assert that Resolution 1122000-01 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985); *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir.2002). In this case, the challenged legislation is presumed valid if the classification of groups is rationally related to a legitimate state interest. *City of Cleburne,* 473 U.S. at 440. Resolution 1122000-01 is facially neutral. It prohibits all vehicles in excess of 20,000 lbs. from using the prohibited roads. Furthermore the weight restrictions contained in the resolution were rationally related to a legitimate interest of the Board of Trustees, the maintenance, repair and control of township roads. The Union Township Board of Trustees

9

considered it necessary to impose the weight restriction to prevent excessive damage to the roadways due to the travel of heavy trucks as well as because of safety concerns presented by the vehicles. Accordingly, Resolution 1122000-01 has a presumption of validity and does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *Cincinnati Motor Transp. Assn. v. Lincoln Hts.* (1971), 25 Ohio St.2d 203, 267 N.E.2d 797.

### (2)    Due Process Clause.

Plaintiffs assert that Resolution 1122000-01 violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Although not articulated it appears that Plaintiffs necessarily assert a substantive due process violation.

> Substantive due process involves the fundamental or natural rights of an individual. The restriction upon the scope and character of governmental activities against an individual is known as substantive due process. The purpose of the Fifth and Fourteenth Amendments is to restrict or limit arbitrary and unreasonable governmental conduct. The Fourteenth Amendment, applying the "due process" clause to the states, does not afford positive rights but it does prohibit arbitrary and unreasonable governmental action.

*Haag v. Cuyahoga County,* 619 F.Supp. 262, 275, *affirmed,* 798 F.2d 1414 (6th Cir.1986).

The Sixth Circuit has articulated the following framework for analyzing substantive due process claims:

> Substantive due process "serves as a vehicle to limit various aspects of potentially oppressive government action." *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996); *see Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986). Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that "shock the conscience." *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir.1993), cert. denied, 512 U.S. 1237, 114 S.Ct. 2742, 129 L.Ed.2d 862 (1994); *Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469, 1474 (6th Cir.1993). Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest. *See, e.g., Reno v. Flores,* 507 U.S. 292, 301-05, 113 S.Ct. 1439, 1446-49, 123 L.Ed.2d 1 (1993); *In re Blue Diamond Coal Co.,* 79 F.3d 516, 521 (6th Cir.1996); *Galas v. McKee,* 801 F.2d 200, 205 (6th Cir.1986).

10

*Valot v. Southeast Local School Dist.,* 107 F.3d 1220, 1228 (6th Cir.1997).

Resolution 112000-01 did not deprive Plaintiffs of a particular constitutional guarantee and does not shock the conscience. Therefore the resolution is subject to a rationality review. Furthermore, Plaintiffs bear the burden to demonstrate that Defendant's decision was not rationally related to a legitimate state interest. See, e.g., *Blue Diamond Coal*, 79 F.3d 516, 521 (6th Cir.1996); *Kentucky Div., Horsemen's Benevolent & Protective Ass'n v. Turfway Park Racing Ass'n*, 20 F.3d 1406, 1414-15 (6th Cir.1994). The weight restrictions contained in the resolution were rationally related to a legitimate interest of the Board of Trustees, the maintenance, repair and control of township roads. The Union Township Board of Trustees considered it necessary to impose the weight restriction to prevent excessive damage to the roadways due to the travel of heavy trucks as well as because of safety concerns presented by the vehicles. Plaintiffs cannot meet their burden and therefore their substantive due process claims must fail as a matter of law.

### (3) **Commerce Clause.**

The United States Constitution expressly authorizes Congress to "regulate Commerce with foreign Nations, and among the several States," U.S. Const. Art. I, § 8, cl. 3, and "the 'negative' or 'dormant' aspect of the Commerce Clause prohibits the States from 'advanc[ing] their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state.'" *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* 504 U.S. 353, 359 (1992) (quoting *H.P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 535 (1949)); see also *Ferndale Lab., Inc. v. Cavendish,* 79 F.3d 488, 492 (6th Cir.1996). The negative Commerce Clause also limits the actions of municipalities where such actions "burden interstate commerce or impede

11

its free flow." *C & A Carbone, Inc. v. Clarkstown,* 511 U.S. 383, 389 (1994).

In deciding if a particular law violates the negative Commerce Clause, a court must first "determine whether [the law] 'regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce.'" *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of Oregon,* 511 U.S. 93, 99 (1994) (quoting *Hughes v. Oklahoma,* 441 U.S. 322, 336 (1979)) (internal quotation marks omitted). A law that discriminates against interstate commerce treats in-state and out-of- state interests differently, benefiting the former and burdening the latter. *Oregon Waste,* 511 U.S. at 99.

If a law discriminates against interstate commerce, it is "virtually *per se* invalid," *id.,* unless "the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Carbone,* 511 U.S. at 392. On the other hand, "nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Oregon Waste,* 511 U.S. at 99 (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970)); *see also City of Philadelphia v. New Jersey,* 437 U.S. 617, 624 (1978).

Furthermore, for Commerce Clause purposes, the Supreme Court has long recognized a difference between economic protectionism, on the one hand, and health and safety regulation, on the other. See *H. P. Hood & Sons v. Du Mond,* 336 U.S. 525, 533, (1949). The Commerce Clause was not intended to prohibit states from legislating on subjects relating to the health, life and safety of their citizens, even though such legislation may indirectly affect commerce. *Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 442 (1960). Regulations that touch upon safety--especially highway safety--are those that "the Court has been most reluctant to invalidate." *Raymond Motor*

*Transp. v. Rice*, 434 U.S. 429, 443 (1978). Indeed, "if safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance in comparison with related burdens on interstate commerce." *Raymond, supra*, 434 U.S., at 449. Those who would challenge such bona fide safety regulations must overcome a "strong presumption of validity." *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 524 (1959).

Resolution 112000-01 on its face is not discriminatory. Furthermore, there is no evidence that it would have anything other than an incidental effect on interstate commerce.. The Union Township Board of Trustees considered it necessary to impose the weight restriction to prevent excessive damage to the roadways due to the travel of heavy trucks as well as because of safety concerns presented by the vehicles. Resolution 1122000-01 has a presumption of validity and does not violate the Commerce Clause of the United States Constitution.

### (4)    **Takings Clause.**

The Takings Clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." This restraint on the power of the government to take private property is made applicable to the states through the Fourteenth Amendment, *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163 (1998). The aim of the Clause is to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The classic taking case is one in which the government directly appropriates private property for its own use. However, "[e]conomic regulation * * * may effect a taking * * * The party challenging the government action bears a substantial burden, for not every destruction or injury to property by such action is a constitutional taking. A regulation's constitutionality is evaluated by

13

examining the governmental action's "justice and fairness." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 523 (1998). Although takings problems are more commonly presented when "the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good," economic regulation may nonetheless effect a taking. *Id.* at 523.

It is well established that reasonable restrictions of real property imposed for the health, welfare, and safety of the population are not unconstitutional deprivations of property; rather, they have been held to be legitimate exercises of the police power. E.g., *Village of Euclid v. Ambler Realty*, 272 U.S. 365 (1926); *Goldblatt v. Town of Hempstead*, 369 U.S. 590 (1962). In *Andrus v. Allard*, 444 U.S. 51 (1979), the Supreme Court held that a regulation prohibiting the sale of artifacts containing eagle feathers was not a taking for which compensation was required. In delivering the opinion of the Supreme Court Justice Brennen stated as follows:

> Often this adjustment curtails some potential for the use or economic exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by purchase. "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922); see *Penn Central, supra*, 438 U.S., at 124, 98 S.Ct., at 2659. The Takings Clause, therefore, preserves governmental power to regulate, subject only to the dictates of " 'justice and fairness.'" *Ibid.*; 98 S.Ct., at 2659; see *Goldblatt v. Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962). There is no abstract or fixed point at which judicial intervention under the Takings Clause becomes appropriate. Formulas and factors have been developed in a variety of settings. See *Penn Central, supra*, 438 U.S., at 123-128, 98 S.Ct., at 2659-2662. Resolution of each case, however, ultimately calls as much for the exercise of judgment as for the application of logic.

*Andrus v. Allard*, 444 U.S. 51, 65 (1979).

Resolution 112000-01 does not take or regulate Plaintiffs' property. Rather, Resolution 112000-01 regulates the use of township roadways. The resolution does not prevent Plaintiffs' use

of his property but rather prohibits him from operating trucks in excess of a specific weight on specific township roads. Plaintiffs' retain their "bundle of rights" in their property, even if one strand can be considered removed, and therefore cannot claim that there has been a taking. *Andrus v. Allard*, 444 U.S. 51, 65 (1979). Resolution 112000-01 does not violate the Takings Clause of the Fifth Amendment.

## (5)    Interstate Commerce Termination Act.

Plaintiffs seek relief under 42 U.S.C. §1983 for Defendant's alleged violation of the Federal Commerce Commission Termination Act, 49 U.S.C. §14501(c)(1), a federal statute which prevents State or local regulation of several aspects of motor vehicle carriers' business operations. Section 14501(c) was first passed in 1994 as part of the Federal Aviation Administration Authorization Act, 49 U.S.C. §14501, which attempted, in part, to deregulate the motor carrier industry. *See* Pub.L. No. 103-305, 108 Stat. 1569, 1606-07. The general preemption rule was recodified in its current form in 49 U.S.C. §14501(c)(1) of the Interstate Commerce Commission Termination Act (ICCTA) and states the following:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier * * * or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

Section 14501(c)(2)(A) of Act specifically provides that the ICCTA:

> shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

Assuming for purposes of argument that Resolution 112000-01 violates the ICCTA it is

15

nevertheless clear that Plaintiffs do not have a cause of action for damages under Section 1983 for its violation. *Henry's Wrecker Serv. Co. of Fairfax County, Inc. v. Prince George's County,* 214 F.Supp.2d 541, 545 (D.Md.2002); *Gonzaga University v. Doe,* 536 U.S. 273 (2002). "To create an enforceable federal right, a statute, through rights-creating language, must unambiguously "convey Congress' intent to confer individual rights * * *"". *Northern Nat. Gas Co. v. Munns,* 254 F.Supp.2d 1103, 1118 (S.D.Iowa 2003)(citing *Henry's Wrecker Serv. Co. of Fairfax County, Inc. v. Prince George's County,* 214 F.Supp.2d 541, 545 (D.Md.2002)). "[T]he text and structure of § 14501(c)(1) do not demonstrate a congressional intent to confer individual rights to motor carriers, Defendant's alleged violations of that statute do not give rise to a cause of action for damages under § 1983." *Henry's Wrecker Serv. Co. of Fairfax County, Inc. v. Prince George's County,* 214 F.Supp.2d 541, 545 (D.Md.2002).

Nevertheless, it is clear that Resolution 1122000-01 does not violate the ICCTA. Purusant to Section 14501(c)(2)(A) the ICCTA does not apply to Resolution 1122000-01 because it does "not restrict the safety regulatory authority of a State with respect to motor vehicles" or "the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle".

## C. OHIO LAW CLAIMS.

Plaintiffs assert that under Ohio law the Union Township Board of Trustees had no authority to adopt Resolution 1122000-01. (DOCUMENT 1, *Notice of Removal*; DOCUMENT 1, *Order Granting Plaintiff's Motion For A Preliminary Injunction*). In so doing Plaintiffs rely upon the decision of the Ohio Supreme Court in *Geauga County Board of Commissioners v. Munn Road Sand & Gravel,* 67 Ohio St.3d 579, 621 N.E.2d 696 (1993), which held that R.C. §4511.07 is not an

express grant of authority to a board of county commissioners to regulate traffic. *Munn* does not support the assertion that Union Township was without authority to enact the Resolution. *Munn* involved the question of the authority of a county to regulate traffic, not the authority of an Ohio township to control the weight of vehicles on township roads as a part of its carrying out the statutory duty to maintain and control roads within the township. Furthermore, *Munn* addressed the issue of whether a particular statute, R.C. §4511.07, granted authority to regulate traffic, not the broader issue of whether such authority was otherwise granted by the state.

A board of township trustees, being a creature of statute has only such powers are expressly granted or necessarily implied from the statutory grant. *Yorkavitz v. Bd. of Township Trustees*, 166 Ohio St. 349, 142 N.E. 2d 655 (1957); *Trustees of New London Township v. Miner*, 26 Ohio St. 452 (1875). It is therefore necessary to examine the powers of township trustees regarding township roads to ascertain the existence of such an implied power.

Whether the authority of a board of township trustees to maintain and control township roads includes the authority to regulate the weight of vehicles on a township road requires an examination of R.C. §5571.02 which provides, in relevant part, that, "[t]he board of township trustees shall have control of the township roads of its township and shall keep them in good repair." R.C. §5535.01(C), further provides, in relevant part, that "[t]he board of trustees shall maintain all such roads within its township".

Since the term "control" in R.C. §5571.02 is not statutorily defined, the rules of statutory construction may be used to interpret the term. See *Caldwell v. State*, 115 Ohio St. 458, 154 N.E. 792 (1926). Inasmuch as the use of the term "control" in R.C. §5571.02 is ambiguous, other provisions on related subjects may be read in *pari materia*, or together and harmoniously, to give full

17

effect to the statutory language. *Bobb v. Marchant*, 14 Ohio St. 3d 1, 469 N.E.2d 847 (1984). R.C. §5571.02 lacks any provision that expressly limits or gives guidance on the extent and methods of control. Other statutory provisions, however, grant specific authority to perform acts which appear to be included within the power to control township roads. For example, see R.C. §505.26 (township may construct bridges and viaducts over streets, railroads and other places where necessary); R.C. §515.01 *et seq.* (township may light roads); R.C. §4511.21(K) (township may set speed limits for unimproved highways); R.C. §5571.01 (trustees have sole discretion whether to construct and improve township roads).

While the examples of permitted control in Revised Code sections other than R.C. §5571.02 are numerous, they are not necessarily exclusive. Where statutory provisions coexist on the same subject, one containing a general grant of power, and another containing a narrower grant of power that enumerates specific permitted acts, the enumeration in the second statute is not exclusive and does not limit the first, absent a contrary indication by statute. See *Springer v. Philipine Islands*, 277 U.S. 189 (1928). Since the examples of control in Revised Code sections other than R.C. §5571.02 are not exclusive and R.C. §5571.02 does not contain prescribed methods by which "control" is to be exercised, the legislative intent is that it be exercised in a reasonable manner. See generally, *Jewett v. Valley Railway Co.*, 34 Ohio St. 601 (1878).

To be reasonable, the means adopted must be suitable to the ends in view, must be impartial in operation, must have a real and substantial relation to the purpose and must not unduly interfere with private rights. *Froelich v. City of Cleveland*, 99 Ohio St. 376, 124 N.E. 212 (1919); see also *Cincinnati Motor Transportation Ass'n v. City of Lincoln Heights*, 25 Ohio St. 2d 203, 267 N.E.2d 797 (1971). Because the objective of the "control" required by R.C. §5571.02 is the keeping open

18

of township roads for the safe travel of the public, any exercise of control by the township trustees must be examined in light of this goal.

The Union Township Board of Trustees considered it necessary to impose the weight restriction to prevent excessive damage to the roadways due to the travel of heavy trucks as well as because of safety concerns presented by the vehicles. If the travel of heavy trucks would cause excessive damage to the road the imposition of weight restrictions is a proper exercise of the duty under R.C. §5571.02 to control and maintain township roads and keep them safe for public travel.

Assuming for purposes of argument that the Union Township Board of Trustees had no authority under Ohio law to adopt Resolution 1122000-01 it is nevertheless clear that the Township is immune from any claim for damage to Plaintiffs resulting from its passage. In 1982, the Ohio Supreme Court abrogated the doctrine of sovereign immunity as it had been judicially created, holding that the defense was unavailable to a municipal corporation sued for the negligent operation of a sewage treatment plant. *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 30, 442 N.E.2d 749, 752. Acting in response to the perceived impact the loss of the sovereign immunity doctrine would have upon the state budget, the legislature adopted R.C. Chapter 2744, entitled the "Political Subdivision Tort Liability Act," which proposed to statutorily reinstate sovereign immunity. See The Ohio Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity (1986), 55 U.Cin.L.Rev. 501, 502. R.C. Chapter 2744 sets forth the general rule of immunity, with certain defined exceptions. R.C. 2744.02(A)(1) states, in part:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

19

Thus, a political subdivision is immune from liability unless R.C. Chapter 2744 provides otherwise. *Agee v. Butler Cty.* (1991), 72 Ohio App.3d 481, 594 N.E.2d 1050. Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. *Id.* at 556-557, 733 N.E.2d 1141; R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Id.* at 28, 697 N.E.2d 610. If any of the exceptions to immunity in R.C. §2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. §2744.03 apply, thereby providing the political subdivision a defense against liability. *Colbert v. Cleveland* (2003), 99 Ohio St.3d 215, 216, 790 N.E.2d 781,783.

R.C. 2744.03(A)(1) provides that "[i]n a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function * * * [t]he political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, <u>legislative, or quasi-legislative function</u>." (Emphasis added). Accordingly, even if the Union Township Board of Trustees had no authority under Ohio law to adopt Resolution 1122000-01 it is nevertheless clear that the Township

is immune from any claim for damage to Plaintiffs resulting from its passage. Furthermore, assuming for purposes of argument that Plaintiffs are entitled to a declaration that under Ohio law the Union Township Board of Trustees had no authority to adopt Resolution 1122000-01 Plaintiffs are not entitled to an award of attorney's fees. Generally, Ohio courts follow the "American rule" regarding attorney fees which mandates that one cannot recover such fees absent statutory authorization. *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 597 N.E.2d 153 (quoting *Sorin v. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 347 N.E.2d 527.). Ohio Revised Code 2721.16 provides that:

> (A) A court of record shall not award attorney's fees to any party on a claim for declaratory relief under this chapter unless a section of the Revised Code explicitly authorizes a court of record to award attorney's fees on a claim for declaratory relief under this chapter or unless an award of attorney's fees is authorized by [R.C. 2323.51], by the Civil Rules, or by an award of punitive or exemplary damages against the party ordered to pay attorney's fees. * * *

Plaintiffs are not entitled to recovery of attorney's fees and costs related to the prosecution of their declaratory judgment action under Ohio law.

## III. CONCLUSION.

Union Township respectfully requests that the Court issue an order granting judgment in its favor pursuant to FRCP 56 and dismissing Plaintiffs' claims for permanent injunctive relief, damages and attorney's fees.

Respectfully submitted,

Patrick K. Dunphy (0017827)
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio 45409
(937) 222-3000
Trial Attorney for Defendant Union Township

21

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon counsel for plaintiffs by placing a copy in the ordinary U.S. Mail, this 1st day of October, 2003, addressed as follows:

> Brian P. Barger, Esq.
> Jack J. Brady, Esq.
> Patricia J. Kleeberger, Esq.
> BRADY, COYLE & SCHMIDT, LLP
> 4052 Holland Sylvania Road
> Toledo, Ohio 43623
>
> Daniel J. Donnellon, Esq.
> Thomas M. Tepe, Jr., Esq.
> KEATING, MUETHING & KLEKAMP PPL
> 1400 Provident Tower
> One East Fourth Street
> Cincinnati, Ohio 45202

_____
PATRICK K. DUNPHY